Filed 9/10/15  In re L.C. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re L.C., A Person Coming Under the Juvenile Court Law. | D067399 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. J518623) |
| v. | |
| AMANDA S., | |
| Defendant and Appellant. | |

APPEAL from a judgment and order of the Superior Court of San Diego County, Kenneth J. Medel, Judge.  Affirmed.

Terence M. Chucas, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Patrice Plattner-Grainger, Deputy County Counsel, for Plaintiff and Respondent.

Appellant Amanda S. (Amanda) appeals a juvenile court judgment and order terminating her parental rights to L.C., age 2 (L.C. or the child), and selecting adoption as her permanent plan. (Welf. & Inst. Code, § 366.26; all further statutory references are to this code unless noted.) Amanda also appeals the court's order denying her modification motion, which sought a transition plan for placement of the child with her. (§ 388.)

On appeal, Amanda argues the court abused its discretion in denying her motion for modification, based on her showing of significantly changed circumstances since her reunification services had been terminated at the 12-month review hearing in May 2014. (§ 388.) As of October 2014, she had graduated from a substance abuse treatment program and she was now successfully caring for her new baby, born in June 2014 to Amanda and the presumed father of L.C. (M.C.).

Amanda further challenges the sufficiency of the evidence to support the court's finding that no exception to adoption preference applied, i.e., the beneficial parent-child relationship. (§ 366.26, subd. (c)(1)(B)(i); *In re Autumn H.* (1994) 27 Cal.App.4th 567, 576 (*Autumn H.*).) M.C.'s parental rights were also terminated, and he did not appeal.

The record does not show any abuse of judicial discretion or lack of supporting evidence, and we affirm the judgment and order.

FACTUAL AND PROCEDURAL BACKGROUND

A. Jurisdiction, Disposition, and Termination of Reunification Services

When L.C. was born in February 2013, Amanda had two older daughters. They were subject to dependency court jurisdiction based on Amanda's drug use, arrests and domestic violence. They were removed from Amanda's care and placed in the

2

guardianship of her father and stepmother. In 2011 and 2012, Amanda and M.C. had each been arrested several times for drug offenses and Amanda, for prostitution. Amanda was again arrested for drug possession on January 26, 2013.

At L.C.'s birth, both she and Amanda tested positive for amphetamines. The San Diego County Health and Human Services Agency (the Agency) investigated and L.C. was taken into protective custody. The Agency filed a dependency petition in February 2013. (§ 300, subd. (b)(1) [parents unable to provide regular care because of substance abuse that posed substantial risk of child's serious physical harm/illness].) The parents were given supervised visitation opportunities. They requested a contested jurisdictional hearing, but they were both arrested for theft crimes before it could take place. They then agreed that jurisdiction could be determined at a document trial and settlement conference in April 2013. The petition was sustained and custody was removed from the parents, and reunification services were ordered.

The Agency had the discretion to detain L.C. with relatives or with a nonrelative extended family member (NREFM), and in April 2013, when she was about two months old, she was placed in foster care in the home of a steppaternal aunt, Mrs. R. (with her husband, "the caregivers"). There the matter rested until August 2013, when Amanda was released from custody. Both she and M.C. requested visitation opportunities and at the recommendation of the social worker, the court extended reunification services for another six months, until the next scheduled hearing in April 2014. Amanda had positive drug tests in October and November 2013 and did not visit L.C. for a while after October.

3

While Amanda was still on probation, she was arrested for use of methamphetamine in December 2013. At that time, she was expecting another child with M.C. Amanda was placed in the Kiva drug treatment program in January 2014. Starting in February 2014, she began weekly supervised visits with L.C.

The next hearing was set for May 14, 2014. By that time, the caregivers had been designated as de facto parents. Amanda had recently been reported by the dependency drug court to be sober and in compliance with the treatment program, and she was due for release from it. Her new baby was born in June 2014.

At the contested 12-month review hearing, the court ruled that the parents had been provided with reasonable services, but had not made substantive progress on their reunification plans. The court made a finding that L.C.'s return to parental custody would be detrimental, and reunification services were terminated. The court scheduled a permanency planning hearing in September 2014. (§ 366.26.) Amanda requested a contested hearing and eventually, the matter was continued until December 2014.

Amanda filed a request to challenge the orders of the juvenile court at the 12-month review hearing. (Cal. Rules of Court, rule 8.452.) However, this Court dismissed the case on July 1, 2014 after Amanda's attorney indicated there were no viable issues for review. (*In re L.C.* (dism. July 1, 2014, D065973).)

### B. Modification Motion and Permanency Planning Hearing

On October 21, 2014, Amanda filed a motion under section 388 for modification of the prior order terminating her reunification services. She requested a transition plan for L.C.'s placement with her, since she had completed the residential Kiva drug

4

treatment program and was maintaining her sobriety in aftercare. Amanda was now caring for her new baby and all of L.C.'s siblings had been attending visits with her and were establishing a strong bond.

The modification petition was heard together with the permanency planning hearing in December 2014, and the same evidence was considered. (§§ 366.26, 388.) It will be outlined in some detail in the discussion portion of this opinion. Regarding modification, the Agency stipulated that Amanda had successfully shown changed circumstances, but it argued that the other prong of section 388, that the requested modification would be in the best interests of L.C., had not been proven. The court denied the petition and proceeded with the contested section 366.26 hearing. The Agency stipulated that Amanda had complied with the visitation and contact requirement, but it contested her claim that the beneficial parental relationship exception to adoption should apply. (§ 366.26, subd. (c)(1)(B)(i).)

At the close of the hearing, the court found L.C. was adoptable and the asserted parental relationship exception did not apply. Rather, adoption was found to be in her best interests as the permanent plan, and the parental rights were terminated. Amanda appeals.

5

DISCUSSION

I

*MODIFICATION MOTION*

Amanda contends the juvenile court erred or abused its discretion in denying her petition for modification under section 388.  Amanda was seeking a transition plan for L.C.'s placement with her where she was living with her own parents.

A.  Applicable Standards:  Two Prongs; Prima Facie Case

The parties stipulated that Amanda, as the petitioner, had made an adequate showing that changed circumstances existed.  (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309-310; *In re Stephanie M.* (1994) 7 Cal.4th 295, 316-317; § 388, subd. (a).)  Amanda next had the burden to show by a preponderance of the evidence that the proposed change would promote the best interests of the child.  (*Stephanie M.*, *supra*, at pp. 316-317; *In re Zachary G.* (1999) 77 Cal.App.4th 799, 806 (*Zachary G.*).)

In deciding whether the petition makes the necessary showing, the juvenile court may consider the entire factual and procedural history of the case.  (*In re Justice P.* (2004) 123 Cal.App.4th 181, 189.)  Appropriate modification factors for the court to consider, as set out in *In re Kimberly F.* (1997) 56 Cal.App.4th 519, 532, include (1) the seriousness of the problem leading to the dependency; (2) the relative strength of the child's bonds with the parent and with the caretaker; and (3) the degree to which the problem could be easily resolved.

This court reviews the grant or denial of a petition for modification under section 388 for abuse of discretion.  (*In re Shirley K.* (2006) 140 Cal.App.4th at p. 71; *In re*

6

*Casey D.* (1999) 70 Cal.App.4th 38, 47.) We inquire if the lower court exceeded the limits of legal discretion by making any arbitrary, capricious, or patently absurd determinations. (*In re Stephanie M.*, *supra*, 7 Ca1.4th at p. 318; *In re Marcelo B.* (2012) 209 Cal.App.4th 635, 642.)

### B.  Analysis on Best Interests Criterion

Amanda's modification petition attached certificates of completion of her residential drug recovery program and parenting class. Since her reunification services were terminated in May 2014, she had maintained her sobriety in aftercare. She was successfully caring for her new baby at her parents' home, where her two older daughters had been placed in guardianship.

The Agency filed addendum reports in October and December 2014, opposing the modification request. Amanda had not visited L.C. for five weeks beginning in September 2014, in part because she and her other children were sick. L.C. had hernia repair surgery in mid-September 2014, and recovered well, in part due to the excellent care given by the caregiver, as noted by the doctor and nurse. Although Amanda's supervised visits with L.C. in October had been positive and interactive, L.C. did not have any difficulty separating from Amanda when the visits were over. The Agency believed that there was a moderate bond between them, but L.C. did not look for Amanda in her absence, or remain in distress when Amanda was not present. L.C. recognized and enjoyed being with her half sisters and the baby, but she did not demonstrate any sibling bond with them.

7

The Agency reported that Amanda was now employed. She and M.C. wanted to get married and move in together, but right now, they felt that staying at their separate parents' homes was working for them. M.C. was no longer opposing termination of his parental rights. The Agency had continuing concerns about whether Amanda would be able to maintain her sobriety outside of the supportive environment she had built over the past year, including living with her parents. Since her birth, L.C. had never lived with Amanda. L.C. was attached to her caregivers, calling them Mom and Dad, and she related to the caregivers' children as her siblings.

Amanda testified that she had been sober since December 2013, and she continued to go to support groups, see her sponsor, and attend meetings if she needed to do so. She had almost completed her drug court obligations. At their weekly visits, L.C. usually went to see the other children before she turned to Amanda to say hello, and then the children played well together. Amanda did not call the caregiver at the time that L.C. had her surgery, because she did not know exactly when it took place. Amanda said that she and M.C. were no longer together as a couple and she did not know whether that would change.

The court received into evidence the Agency's reports and Amanda's attachments to the modification petition. The same evidence was considered for the permanency planning hearing as well. (§§ 366.26, 388.) The social worker was not called to testify. In making its ruling on the modification petition, the court first acknowledged the efforts that Amanda had made to improve her parenting skills and health, as well as the caregivers' efforts, and it noted that it was not disparaging anyone. The court focused on

8

the child's need for stability and whom she believed to be her parents and caregivers. Even though L.C. would not now be in mortal danger if returned to Amanda, the court found that keeping the child in the home of the caregivers would greatly promote her best interests, because she was bonded to them and they were aware of and coping with her special medical and other needs. Based on Amanda's history, including drug abuse and criminal behaviors when together with M.C., the court was concerned that Amanda might not be able to adhere to her new lifestyle if she got back together with him, which was still a possibility.

In its ruling, the court addressed the appropriate factors for evaluating the best interests aspect of section 388, in a balanced and thorough manner. The court acknowledged the seriousness of the problems leading to dependency, as well as analyzing the relative strength of the bonds between L.C. and Amanda, and L.C. and her caregivers. (*In re Kimberly F., supra,* 56 Cal.App.4th at p. 532.) The court discussed the relative ease with which the dependency issues were being resolved, by acknowledging that Amanda had made great strides in addressing her problems, but she was also exposed to certain risks of relapsing. (*Ibid*.)

The juvenile court had a sufficient basis in the evidence to conclude that Amanda had not demonstrated that removing L.C. from her placement with the caregivers would be in the child's best interests. On this record, it was not an abuse of discretion for the court to deny the modification petition.

II

*TERMINATION OF PARENTAL RIGHTS*

A.  Applicable Standards; First and Second Prongs

It is not disputed that L.C. is likely to be adopted, either by the interested caregivers or by other approved local families wishing to adopt a child with such characteristics.  Amanda contends the beneficial parental relationship exception to adoption properly applies to this case.  (§ 366.26, subd. (c)(1)(B)(i); *Autumn H., supra,* 27 Cal.App.4th at p. 575.)  She argues that insufficient evidence supports the court's decision to terminate her parental rights, in light of the bond she had established with L.C. and the benefits to the child of experiencing that extended family environment.

"Regular visitation and contact" are statutory threshold requirements for a claim that a beneficial parental relationship has been maintained.  (§ 366.26, subd. (c)(1)(B)(i).) It was not disputed that Amanda's efforts to maintain contact and visitation, especially since February 2014 when she was at the Kiva program, met the first criterion for this exception to apply.  However, the court also had to determine if Amanda showed the child would substantially benefit from continuing the relationship.  (*Ibid.*; *In re Justice P.*, *supra*, 123 Cal.App.4th at p. 191; *Zachary G.*, *supra*, 77 Cal.App.4th at pp. 810-811.)  To support this exception to adoption, the court must find "a compelling reason for determining that termination would be detrimental to the child."  (§ 366.26, subd. (c)(1)(B); *In re C.F.* (2011) 193 Cal.App.4th 549, 553.)

The juvenile court considers the detriment issue on a case-by-case basis, taking into account the many variables that can affect the parent-child relationship.  (*Autumn H.,*

10

*supra*, 27 Cal.App.4th at pp. 575-576; *In re J.C.* (2014) 226 Cal.App.4th 503, 532.) Among the variables to be considered in evaluating the benefits of a parental relationship are the child's age, the amount of time the child spent in the parent's care, whether the interactions are positive or negative, and whether the child has particular needs that the parent can satisfy. (*In re Angel B.* (2002) 97 Cal.App.4th 454, 467.)

The court in *In re J.C., supra*, 226 Cal.App.4th at pages 530 to 531 applied a substantial evidence standard of review to the preliminary factual issue of whether the parent had proved she had a beneficial parental relationship with the child. However, as to the weighing test under section 366.26, subdivision (c)(1)(B)(i), in which the juvenile court balances the parent-child relationship against the benefits the child would derive from adoption, the appellate court opined that the abuse of discretion test may apply to evaluate this " ' " 'quintessentially' " discretionary decision.' " (*In re J.C., supra,* at p. 531*; In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1314.) Based on the respective showings, the court must balance "the strength and quality of the natural parent[-]child relationship in a tenuous placement against the security and the sense of belonging a new family would confer." (*Autumn H., supra,* 27 Cal.App.4th at p. 575.)

The weight of authority still applies the substantial evidence test to appeals from decisions about the beneficial parental relationship exception. (*Autumn H., supra*, 27 Cal.App.4th at pp. 575-577.) In reviewing the sufficiency of evidence, the reviewing court makes presumptions in favor of the judgment, views the evidence in the light most favorable to the Agency, and gives the order the benefit of all reasonable inferences. (*In re C.F., supra,* 193 Cal.App.4th at p. 553; *In re L.Y.L.* (2002) 101 Cal.App.4th 942, 947.)

B.  Application of Criteria:  Benefits of Parental Relationship

In its ruling, the court noted that both the sibling and the parental benefit exceptions were being asserted, and its ruling applied to both.  Only the parental benefit exception is argued on appeal, however.

Amanda points to her consistent, positive visitation interactions with L.C. as showing the child would benefit from continuing a parental relationship with her. (§ 366.26, subd. (c)(1)(B)(i); *In re Justice P.*, *supra*, 123 Cal.App.4th at p. 191; *In re C.F., supra,* 193 Cal.App.4th at p. 555.)  The assessment social worker reported that Amanda and L.C. had a moderate bond.  In stating its ruling, the juvenile court expressed its wish to the parties that Amanda should be able to continue to have visitation with L.C., even after termination of her rights, because it recognized that such a bond existed. Amanda argues that the court could have implemented that wish by ordering guardianship, rather than termination of parental rights.

Although visitations were positive, the social worker who observed them noticed that L.C. was consistently able to separate from Amanda without difficulty at the end of the visits.  Amanda had never progressed to unsupervised or overnight visits.  L.C. preferred socializing with Amanda over visiting with the social worker, but L.C.'s behavior was basically the same at their visitation, or at day care, or in the care of the social worker.  The social worker attributed L.C.'s sociability and resilience, and her ability to regulate her own emotions and explore her surroundings, to the secure attachment that she had developed with her primary caregivers, rather than to Amanda's influence.

12

Although there was clearly a moderate bond between Amanda and L.C., Amanda had never behaved in a consistent parental role toward her, except during visitation hours. L.C., still under two years old at the time, had never lived with Amanda and the half sisters, and even though they were all comfortable at visitation, the court appropriately found that the positive aspects of such relationships did not outweigh the benefits to L.C. of a permanent placement in an adoptive home. The caregivers were seen to be the ones who were meeting L.C.'s medical, developmental, and emotional needs. If the caregivers became unable to adopt, there were other approved local families interested in adopting a child like this one.

Based on the nature of the relationship Amanda had developed with L.C., it was unlikely to be detrimental to L.C. if her parental ties were severed. L.C. did not have any real opportunity to develop a significant attachment to Amanda as a parental figure. (*Autumn H., supra,* 27 Cal.App.4th at pp. 575-576; *In re C.F., supra,* 193 Cal.App.4th at pp. 558-559 [parent cannot establish applicability of parent-child beneficial relationship exception by showing the child derives only incidental benefits from maintaining parental contact].) Amanda's presentation fell short of the required showing in support of the parental benefit exception, i.e., evidence of a substantial, overriding benefit to the child when a parental role exists, such that it would be detrimental to terminate it. (*Id.* at p. 555.) Conversely, the evidence did not support a finding that L.C. would be harmed if she stayed with the caregivers. The benefits and stability that their home had provided and would provide to her evidently outweighed any harm that might occur to the child by severing her relationship with Amanda.

13

Moreover, the juvenile court had an adequate basis to conclude that L.C. did not have any special needs that only Amanda could satisfy.  (*In re Angel B., supra,* 97 Cal.App.4th at p. 467.)  Without more evidence of a substantial, overriding benefit to the child if her parental relationship with Amanda were continued, the court was justified in concluding this exception to adoption did not apply here.  (*Autumn H., supra,* 27 Cal.App.4th at pp. 575-576.)  Substantial evidence supports the juvenile court's findings and orders.  (*In re L.Y.L.*, *supra*, 101 Cal.App.4th at p. 947.)

DISPOSITION

The judgment and order are affirmed.

HUFFMAN, J.

WE CONCUR:

McCONNELL, P. J.

O'ROURKE, J.

14